UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| THERESA FARMER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 4:19-cv-252 |
| | ) |
| WEST CLARK COMMUNITY | ) |
| SCHOOLS CORPORATION, AND | ) |
| | ) |
| LISA R. HAWKINS, | ) |
| Principal | ) |
| In her individual and office capacity, and | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

**NOW COMES** the Plaintiff, Theresa Farmer, by counsel, and for her Complaint for Damages and Demand for Jury Trial against the Defendants, West Clark Community School Corporation and Lisa R. Hawkins (Principal), states and represents as follows:

**INTRODUCTION**

1. This is a lawsuit brought by Plaintiff THERESA FARMER against Defendants WEST CLARK COMMUNITY SCHOOLS CORPORATION ("WCCS") and LISA R. HAWKINS ("Hawkins"), between which parties there was an employment relationship, for the harassment and retaliation Ms. Farmer suffered at work. This action seeks damages resulting from WCCS' and Hawkins' violations of Ms. Farmer's rights under the ADEA at 29 U.S.C. §621 to §634 and the American with Disabilities Act of 1990 at 42 U.S.C. § 12101 et seq, during her employment with WCCS. WCCS and Hawkins violated Ms. Farmer's right's further by retaliating against her after she invoked federally protected

1

rights under the ADEA and the ADA in violation of 29 U.S.C. §623 and 42 U.S.C. § 12101 et seq.

## EEOC COMPLIANCE

2. Plaintiff exhausted all administrative proceedings available to her by timely filing a Charge of Discrimination and exhausting all administrative proceedings available under Indiana Code §20-28-7.5

3. On May 30, 2019, Plaintiff filed a timely charge of discrimination and retaliation in employment with the United States Equal Opportunity Commission (EEOC) against WCCS and Lisa R. Hawkins, attached hereto and marked as Exhibit A.

4. The EEOC issued Plaintiff a Dismissal and Notice of Rights on August 29, 2019, received by Plaintiff on August 31, 2019. A true and accurate copy of the Dismissal and Notice of Rights is attached hereto and marked as Exhibit B.

5. This action was timely filed within ninety (90) days of receipt by Plaintiff of the Dismissal and Notice of Rights.

## JURISDICTION AND VENUE

6. The jurisdiction of this Court is invoked and proper as Plaintiff's claims arise under 28 U.S.C. §1331 with federal questions involving the ADEA at 29 U.S.C. §621 to §634 and the American with Disabilities Act of 1990 at 42 U.S.C. § 12101 et seq.

7. Venue is proper under 28 U.S.C. Section 1391 (b) as all of the practices alleged to be unlawful were committed within the jurisdiction of the Unites States District Court for the Southern District of Indiana and 28 U.S.C. §1391 allows for an action to be brought in the district where the Defendants reside or in which the cause of action arose.

8. Defendant WCCS is located in Clark County, Indiana. WCCS is a school corporation in the State of Indiana.

9. Upon information and belief, Defendant Hawkins resides in Clark County, Indiana.

## PARTIES

10. Plaintiff, age 57, resides at 3140 Kernan Lake Circle, #206, Jacksonville, FL 32246. While employed by Defendants, Plaintiff was a resident of Clark County, Indiana.

11. Plaintiff is a person entitled to protection under the ADEA and ADA.

12. Defendant West Clark Community School Corporation is now, and was at all times relevant to this action, a school corporation in the State of Indiana. WCCS enjoys a principal office located at 601 Renz Avenue, Sellersburg, Indiana 47172.

13. At all times complained of herein, Defendant WCCS was the employer of the Plaintiff.

14. Defendant WWCCS is engaged in the education of students and management of West Clark Community Schools and staff throughout various school sites, including Borden Elementary, where the Plaintiff worked at all times relevant hereto.

15. Defendant WCCS employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year. Therefore, Defendant WCCS is "an employer" within the meaning of 29 U.S.C. §630(b) and 42 U.S.C. § 12101 et seq.

16. That upon information and belief, at all times relevant hereto, Defendant Lisa R. Hawkins, Principal, in her individual and official capacity, is a resident of Indiana and may be served at 8436 Aberdeen Lane, Charlestown, IN 47111. At all times relevant hereto, Defendant Lisa R. Hawkins (herein after referred to as "Hawkins"), was the principal at Borden Elementary, an administrative employee and agent of WCCS, and Plaintiff's immediate superior acting within the scope of her employment and under color of law.

## FACTUAL ALLEGATIONS

17. That the legal and factual allegations contained in Complaint Paragraphs One (1) through Eighteen (18) are repeated and realleged as if fully set forth herein;

18. Plaintiff is 57 years old.

19. Plaintiff began working for Defendant WCCS in or around 1995 as a teacher's aide.

20. Since 2005, Plaintiff has worked as a general education classroom teacher for Defendant WCCS, first at Henryville Elementary, and subsequently at Borden Elementary beginning in 2007.

21. Defendant Hawkins began working at Borden Elementary as the school principal in the fall of 2011.

22. Upon information and belief, Defendant Hawkins began harassing the school's two oldest teachers almost immediately, Beverly Wynn, in her 80s, and Treva Martin, in her 70s. Specifically, Defendant Hawkins rated them very poorly on performance evaluations, closely monitored them, and constantly criticized their work.

23. Upon information and belief, Beverly Wynn and Treva Martin elected to retire due to the hostile environment they were subjected to at the hands of Defendant Hawkins.

24. Plaintiff and her colleague, Deanna Pendley, found themselves the next two oldest teachers at Borden Elementary and began suffering from targeting and harassment by Defendant Hawkins, again by rating them very poorly on teacher performance evaluation.

25. After Ms. Pendley's resignation in 2016, Plaintiff became the oldest classroom teacher in the school.

26. Defendant Hawkins harassed Plaintiff throughout the 2017-2018 school year, denying leave requests, writing her up, and giving her unwarranted negative evaluations.

27. On February 19, 2018, Defendant Hawkins purposefully chose to conduct a "routine classroom observation" of Plaintiff during a period of record-setting warm temperatures and when she knew the school's air conditioning had not been turned on.

28. Defendant Hawkins rated Plaintiff extremely poorly during this classroom visit, largely based on the conduct of several students on this alarmingly warm day.

29. Plaintiff contested Defendant Hawkins' observations and ratings.

30. On April 16, 2018, Plaintiff learned at the last-minute that her class would not be doing I-STEP prep and hurried to develop a new class plan.

31. Defendant Hawkins purposefully chose to perform a second evaluation of Plaintiff on that day.

32. On that day and during the classroom observation, Defendant Hawkins again rated the Plaintiff poorly, this time for the conduct of Plaintiff's classroom aide during reading and discussion groups.

33. Plaintiff promptly responded to Defendant Hawkins concerns.

34. Nonetheless, based on the February 19, 2018 and April 16, 2018 observations, Defendant Hawkins labeled Plaintiff an ineffective teacher, triggering a three-tiered remediation plan.

35. Plaintiff disagreed with Defendant Hawkins' finding that Plaintiff was an ineffective teacher.

36. Defendant Hawkins was well aware of this result and the implications, as she took part in the committee that developed the three-tiered remediation plan.

37. Defendant Hawkins ordered Plaintiff to create the first tier of the remediation plan, an Awareness Plan, with Defendant Hawkins' giving her numerous items to be addressed in the plan.

38. Noticing a familiar pattern of targeting, harassment, and poor evaluations from Defendant Hawkins directed toward the oldest teachers, and feeling that the recommendations for incorporation from Defendant Hawkins were excessive, Plaintiff contacted her union representative, Sarah Craft for help.

39. Union representative Sarah Craft shared Plaintiff's concerns about Defendant Hawkins' excessive recommendations that Plaintiff was required to incorporate into the Awareness Plan.

40. Union representative Sarah Craft, Plaintiff and then-superintendent Dr. John Reed met regarding Plaintiff's concerns on May 4, 2018.

41. On that date and at that meeting, Dr. Reed, after speaking with Plaintiff and reviewing Defendant Hawkins' recommendations, asked Plaintiff if there was a personality conflict between she and Defendant Hawkins. Dr. Reed indicated he would speak with Defendant Hawkins about the plan.

42. Plaintiff awaited further direction from Dr. Reed prior to finalizing the Awareness Plan, per the recommendation of union representative Sarah Craft.

43. On Tuesday May 15, 2018, union representative Sarah Craft asked Plaintiff if she was available for a meeting with Defendant Hawkins and Dr. Reed about the Awareness Plan on Friday, May 18, 2018.

44. At the May 18, 2019 meeting, Defendant Hawkins criticized and berated Plaintiff for following this advice of her union representative, Sarah Craft, and not completing the Awareness Plan prior to the meeting.

45. At subsequent meetings with Defendant Hawkins, Plaintiff often became emotional and teary due to the harassment of Defendant Hawkins.

46. On May 22, 2018, Plaintiff formally requested a transfer to Henryville Elementary, which was denied by Defendant WCCS.

47. On June 12, 2018, Plaintiff filed a charge of Age and Disability Discrimination with the EEOC, attached hereto and marked as Exhibit C.

48. Defendants Hawkins was well aware of Plaintiff's EEOC charge, with Defendant Hawkins having assisted Defendant WCCS' craft their response to the charge, submitted on July 26, 2018.

49. In response to Plaintiff's EEOC charges of discrimination, Defendants began retaliating against her almost immediately.

50. During the summer break prior to the start of the 2018/2019 school year, Plaintiff's personal belongings were removed from her fifth-grade classroom at Borden Elementary and placed out in the hallway without her knowledge or any attempts at communication to inform her.

51. After filing the EEOC charges, Plaintiff contacted Defendant WCCS, its employees and agents, repeatedly to find out her classroom assignment and if she even still had a job.

52. Defendant WCCS refused to communicate with Plaintiff as to her new classroom assignment throughout the summer leading up to the 2018/2019 school year.

53. It was not until two business days before the start of the school year that Defendant Hawkins finally informed Plaintiff she was being moved from a general education fifth-grade classroom teacher position into a special area position. See reassignment letter, attached hereto and marked as Exhibit D.

54. Upon information and belief, Defendant WCCS and Defendant Hawkins hired Kailey Adams, less than 40-years-old, to replace Plaintiff as a fifth grade general education classroom teacher at Borden Elementary.

55. Plaintiff was the only Borden Elementary teacher left without a school assignment until two business days before the start of the school year, all others having been notified of their assignments weeks prior.

56. Special area teaching positions are generally viewed as less favorable and less prestigious as compared to the position of a general classroom teacher.

57. Moving Plaintiff to a special area teaching position was intended to punish her for filing the EEOC charge against Defendant WCCS and Defendant Hawkins.

58. Plaintiff had no experience teaching special area, and more specifically no experience teaching art or STEM.

59. STEM was a brand-new course at Borden Elementary that Plaintiff was assigned to.

60. The transfer and its last-minute timing meant that Plaintiff had to prepare for two courses she had never taught, including one with no existing curriculum, with just two days before the start of the new school year.

61. Defendant Hawkins notified Plaintiff that the Awareness Plan and all of its onerous requirements as required by Defendant Hawkins, created while Plaintiff was a general classroom teacher, would apply to her new role as a special area teacher.

62. Moving Plaintiff from a general classroom to a special area class also meant that Plaintiff went from having 25-30 students to over 340 students.

63. Placement in this new position invoked feelings of stress, anxiety and depression, and further exacerbated Plaintiff's underlying chronic conditions – pancreatitis, irritable bowel syndrome and sarcoidosis.

64. Plaintiff struggled to find time to create the new curriculum and comply with the requirements under the Awareness plan created with a general education classroom layout and framework in mind.

65. Plaintiff continued to suffer harassment, targeting and unfair evaluations from Defendant Hawkins as she made attempts to adjust to her new role.

66. On August 28, 2019, Plaintiff met with Defendant Hawkins. At this meeting, Defendant Hawkins berated Plaintiff for, inter alia, comments made by her husband, failing to collaborate with other teachers, participation at unpaid PLCs meeting that Defendant Hawkins was requiring, perceived deficiencies with her lesson plans, and classroom management issues.

67. On September 11, 2018, just 90 days after the filing of Plaintiff's EEOC charge and less than five weeks since Plaintiff implemented the Awareness Plan, Defendant Hawkins abruptly moved Plaintiff to the second and more severe tier of the remediation plans – the Initial Assistance Plan.

68. Defendant Hawkins wrote the Initial Assistance Plan that Plaintiff was required to comply with.

69. Defendant Hawkins created the Initial Assistance Plan by incorporating the requirements and areas of concern that she had previously provided to Plaintiff for the Awareness Plan.

70. Plaintiff made extensive efforts to comply with all requirements under the Initial Assistance Plan.

71. The Plaintiff was engulfed in a hostile work environment where she was constantly subject to criticism, hostile meetings, negative performance reviews, and moved out of her role as classroom teacher.

72. By November 29, 2018, Defendant Hawkins had already decided to move Plaintiff to the third-tier plan, the Intensive Awareness Plan.

73. In December 2018, Plaintiff requested and received FMLA leave due to a flare-up of chronic pancreatitis, coupled with increased stress and anxiety.

74. On January 29, 2019, Plaintiff, union representative Pam Dilbeck and Defendant WCCS Human Resources Director Todd Voigt met regarding the timeline of the remediation plans and Defendant Hawkins' failure to follow proper procedures.

75. At that meeting, Todd Voigt stated that if Plaintiff's allegations were true, they were cause for concern.

76. Todd Voigt failed to follow up with Plaintiff regarding her concerns following this meeting.

77. Upon learning of Plaintiff's meeting with Defendant WCCS Human Relations Department, Defendant Hawkins berated and chastised Plaintiff for having the meeting.

78. Plaintiff was informed at an April 2019 check-in meeting with Defendant Hawkins and Todd Voigt that Defendant Hawkins was recommending her teaching contract be terminated.

79. At this meeting, Mr. Voigt informed Plaintiff that she could either resign or be terminated. Plaintiff declined to resign, believing that her termination was unjust and based on discriminatory and retaliatory motives.

80. On April 26, 2019, Defendant Hawkins sent Plaintiff her recommendation for cancellation of contract, attached hereto and marked as Exhibit E.

81. Plaintiff was informed in this letter that she was barred from WCCS property and would not be paid while Interim Superintendent Clemencia D. Perez-Lloyd considered the Principal's recommendation.

82. Plaintiff, through counsel, made attempts to arrange for the retrieval of her personal property from Borden Elementary.

83. Reasonably believing she was allowed access, Plaintiff and her husband attempted to retrieve her belongings from Borden Elementary after school hours. Plaintiff's husband was allowed entry into the building by Defendant Hawkins.

84. As Plaintiff collected her things, an employee and/or agent of Defendant WCCS forced Plaintiff off of the property and she was threatened with felony criminal charges.

85. Plaintiff requested and was granted a meeting with Interim Superintendent Clemencia D. Perez-Lloyd regarding Defendant Hawkins' recommendation for termination on May 2, 2019.

86. At this meeting, Plaintiff stated to Interim Superintendent Perez-Lloyd that she was being discriminated against by Defendant Hawkins just as Defendant Hawkins had discriminated against Treva Martin, Beverly Wynn and Deanna Pendley.

87. Plaintiff also told Interim Superintendent Perez-Lloyd that she was being retaliated against by Defendant Hawkins, and that Defendant Hawkins' criticisms of her were not justified, but rather mere attempts to harass her and force her to resignation or retirement.

88. On May 16, 2019, Interim Superintendent Perez-Lloyd informed Plaintiff that she was upholding the decision of Defendant Hawkins, in a move intended as retaliation for the Plaintiff's EEOC charges of discrimination against the Defendant WCCS.

89. Interim Superintendent Perez-Lloyd took Defendant Hawkins' observations at face value and no corroboration or further investigation was initiated.

90. Plaintiff filed a second set of EEOC charges on May 30, 2019, alleging age discrimination and retaliation at the hands of Defendant Hawkins and Defendant WCCS, attached hereto and marked as Exhibit A.

91. Plaintiff challenged the decision of the interim-superintendent Perez-Lloyd and requested a hearing with the School Board of Trustees West Clark Community Schools.

92. The Board Hearing took place over the course of two evenings, June 18, 2019 and June 25, 2019, wherein Plaintiff brought her allegations of harassment, discrimination and retaliation to the attention of West Clark Community Schools Board of Trustees.

93. A transcript from the first evening of the Board Hearing on June 18, 2019 is attached hereto and marked as Exhibit F.

94. No transcript was taken on the second evening of the Board Hearing.

95. On July 15, 2019, the School Board of Trustees of Defendant WCCS voted to terminate Plaintiff's employment.

96. Defendant WCCS failed to take any remedial action against Defendant Hawkins.

97. The remediation plans that Plaintiff were forced to comply with included requirements that Plaintiff attend Professional Learning Community (PLC) meetings.

98. At that time during the 2018/2019 school year, PLC meetings at Borden Elementary were held outside of the normal school day, during uncompensated hours.

99. At that time during the 2018/2019 school year, Borden Elementary teachers were not paid for their attendance at PLC meetings.

100. Accordingly, Plaintiff was forced to attend PLC meetings as part of her remediation plans and was not compensated for that time.

101. At that time during the 2018/2019 school year, the teacher's union negotiated with Defendant WCCS that teacher's attendance at the meetings occurring outside of the school day could not be compelled, but rather was discretionary to the teachers, since they were unpaid.

102. After Plaintiff was terminated by Defendant WCCS, Defendant WCCS failed to pay Plaintiff her accrued sick and personal time.

103. After Plaintiff's employment was terminated by Defendant WCCS, Defendant WCCS further retaliated against her by refusing to provide requested documentation requested by Duval County Public Schools, a district that was attempting to hire the Plaintiff.

104. Upon information and belief, during the 2018/2019 school year, Plaintiff was the only employee still working for Defendant WCCS to have filed a charge of discrimination against the Defendant WCCS and Defendant Hawkins.

105. Upon information and belief, Plaintiff is the only WCCS teacher terminated in the last three years.

106. During the 2017/2018 school year, Defendant Hawkins placed only one other teacher on the first tier of the remediation plans. This teacher, upon information and belief, was under the age of 40 and was quickly moved off of the plan by Defendant Hawkins.

107. Plaintiff is the only WCCS teacher placed on the second tier of the three-tiered remediation plan.

108. Plaintiff is the only WCCS teacher placed on the third tier of the three-tiered remediation plan.

109. As a direct and proximate result of the foregoing conduct, Plaintiff incurred and continues to incur a substantial loss of past, present and future income; has suffered damage to her career, has suffered mental and physical anguish, and has incurred additional financial losses, including inter alia costs associated with invoking her federally protected civil rights.

**STATEMENT OF CLAIMS**

COUNT ONE—AGE DISCRIMIATION
Age Discrimination in Employment Act of 1967 29 U.S.C §621 to §634

110. Plaintiff realleges each and every matter contained in the previous paragraphs of this Complaint and further states and alleges as follows:

111. The subjection of Plaintiff to discrimination on the basis of her age by Defendant Hawkins, agent and employee of Defendant WCCS, in whole or in substantial part because of her age was in violation of the ADEA, 29 U.S.C. §623(1).

112. Defendant WCCS had actual and/or constructive knowledge of this discrimination and failed to exercise the proper degree of care to prevent or resolve this discrimination. Interim Superintendent Perez-Lloyd and members of the West Clark Community Schools Board of Trustees had knowledge of this discrimination and did not resolve the discrimination or discipline Defendant Hawkins.

113. Plaintiff suffered adverse employment actions as a result of this discrimination, including but not limited to receiving negative performance evaluations, moving Plaintiff's personal belongings out into the school hallway without informing her, depriving her of a new classroom assignment, stripping her of her role as a general education teacher, placing her on a three-tiered remediation plan and moving her unreasonably quickly through each plan which, in effect, pushed her closer and closer to termination, requiring that she attend unpaid PLC meetings, terminating Plaintiff, barring her from the school property and refusing to allow her to watch her students' graduation, threatening Plaintiff with felony charges for attempting to retrieve her personal belongings, and interfering with prospective job opportunities and subsequent employment.

114. Defendants' violation of the ADEA was willful and Plaintiff seeks liquidated damages for each violation.

115. Plaintiff has been made to suffer and will continue to suffer mental anguish, emotional distress, loss of employment and future employment opportunities, and loss of wage and benefits, as the direct and proximate result of Defendants' violation of her civil rights as alleged herein.

116. Plaintiff is entitled to the rights and remedies at law provided by the ADEA, 29 U.S.C. §216(b), including actual damages, compensatory damages, liquidated damages, and attorneys' fees.

### COUNT TWO – UNLAWFUL RETALIATION
### §12203 Americans With Disabilities Act of 1990

117. Plaintiff realleges each and every matter contained in the previous paragraphs of this Complaint and further states and alleges as follows:

118. Plaintiff engaged in ADA protected activity including, but not limited to, completing a charge of disability discrimination against the Defendants WCCS and Hawkins with the EEOC, in violation of the ADA, §12203.

119. Defendants took adverse employment action against Plaintiff when they retaliated against Plaintiff for her actual and perceived ADA protected activity, including but not limited to giving Plaintiff negative performance evaluations, moving Plaintiff's personal belongings out into the school hallway without informing her, depriving her of a new classroom assignment, stripping her of her role as a general education teacher, placing her on a three-tiered remediation plan and moving her unreasonably quickly through each plan which, in effect, pushed her closer and closer to termination, requiring that she attend unpaid PLC meetings, terminating Plaintiff, barring her from the school property and refusing to allow her to watch her students' graduation, threatening Plaintiff with felony

charges for attempting to retrieve her personal belongings, and interfering with prospective job opportunities and subsequent employment.

120. Defendants' violation of the ADA was willful and Plaintiff seeks liquidated damages for each violation. 29 U.S.C. §216(b).

121. Plaintiff has been made to suffer mental anguish and emotional distress, mortification and embarrassment, loss of employment and future employment opportunities, and the loss of wages and benefits, as the direct and proximate result of Defendants' violation of her civil rights as alleged herein.

122. Plaintiff is reasonably certain to continue to suffer these damages in the future.

123. Plaintiff is entitled to the rights and remedies at law provided by the ADEA, 29 U.S.C. §216(b) including actual damages, compensatory damages, liquidated damages, and attorney's fees.

## COUNT THREE – UNLAWFUL RETALIATION
Age Discrimination in Employment Act of 1967 29 U.S.C §621 to §634

124. Plaintiff realleges each and every matter contained in the previous paragraphs of this Complaint and further states and alleges as follows:

125. Plaintiff engaged in ADEA protected activity including, but not limited to, completing a charge of age discrimination against the Defendant WCCS and Defendant Hawkins with the EEOC, in violation of the ADEA, 29 U.S.C. §623(d).

126. Defendant took adverse employment actions against Plaintiff in retaliation for her actual and perceived ADEA protected activity, including, but not limited to giving Plaintiff negative performance evaluations, moving Plaintiff's personal belongings out into the school hallway without informing her, depriving her of a new classroom assignment, stripping her of her role as a general education teacher, placing her on a three-tiered remediation plan and moving her unreasonably quickly through each plan which, in effect, pushed her closer and closer to termination, requiring that she attend unpaid PLC meetings, terminating Plaintiff, barring her from the school property and refusing to allow her to watch her students' graduation, threatening Plaintiff with felony charges for attempting to retrieve her personal belongings, and interfering with prospective job opportunities and subsequent employment.

127. Defendants' violation of the ADEA was willfull and Plaintiff seeks liquidated damages for each violation. 29 U.S.C. §216(b).

128. Plaintiff has been made to suffer mental anguish and emotional distress, mortification and embarrassment, loss of employment and future employment opportunities, and the loss of wages and benefits, as the direct and proximate result of Defendants' violation of her civil rights as alleged herein.

129. Plaintiff is reasonably certain to continue to suffer these damages in the future.

130. Plaintiff is entitled to the rights and remedies at law provided by the ADEA, 29 U.S.C. §216(b) including actual damages, compensatory damages, liquidated damages, and attorney's fees.

## **JURY TRIAL DEMAND**

131. Plaintiff, by counsel, respectfully demands a jury trial on all issues and claims triable by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for a judgment in her favor jointly and severally in her favor against Defendants, and asks that the following be awarded:

a. Wages and benefits lost, and other pecuniary losses suffered as a result of Defendant's unlawful actions under ADEA at 29 U.S.C. §621 to §634, the American with Disabilities Act of 1990 at 42 U.S.C. § 12101 et seq, in an amount that will make her whole;

b. Compensatory damages sufficient to compensate her for the emotional distress, mental anguish, loss of enjoyment of life, humiliation, embarrassment, inconvenience, injury to her personal and professional reputation, injuries to her career, and other non-pecuniary harm she has suffered as a result of the Defendant's violations of ADEA at 29 U.S.C. §621 to §634, the American with Disabilities Act of 1990 at 42 U.S.C. § 12101 et seq,;

c. Punitive damages for Defendants' willful, intentional, and reckless disregard for Plaintiff's federal rights under ADEA at 29 U.S.C. §621 to §634, the American with Disabilities Act of 1990 at 42 U.S.C. § 12101 et seq,;

d. Payment of her reasonable attorneys' fees and costs associated with this action;

e. Pre-judgement and post-judgment interest on all sums recoverable; and

f. Any and all other relief, including prospective injunctive relief, to which she is entitled.

## RESERVATION OF RIGHTS

Pursuant to the rules of pleading and practice, Plaintiff Theresa Farmer reserves the right to assert additional violations of federal and state law.

Dated: November 22, 2019        **Respectfully submitted,**

By: /s/ *Annie L. Malka*
Annie L. Malka, Esq.
Malka Law, PLLC
IN Bar # 34104-10
KY Bar # 97039
Attorney at Law
1387 S. Fourth Street
Louisville, KY 40208
Phone: 502-212-5888
Fax: 800-316-3407
Annie@MalkaLawGroup.com
*Attorney for Plaintiff,*
*Theresa Farmer*